| U.S. Department of Interior – Bureau of Indian Affairs Office of Justice Services - Division of Drug Enforcement | **Exhibit 11** |
|---|---|

### INCIDENT REPORT                                          Page 1 of 4

| **Incident Number:** | **Incident Title:** CS Interview |
|---|---|
| **Report By:** SA Isaiah Soldier | **Date Prepared:** 12/26/2019 |
| **Report Re:** C19000869 | |

1. On December 20th, 2019 at approximately 1:29 PM, Bureau of Indian Affairs – Division of Drug Enforcement Special Agent Isaiah Soldier and Federal Bureau of Investigations Special Agent Jerrod Birchler interviewed a BIA-DDE Confidential Source (CS).

2. The CS provided identifying information.

3. **Interview of the CS**: (This is not a verbatim account of the interview, but rather a summary of the facts. For the full interview, see audio recording.)

4. SA Soldier advised the CS that the interview was voluntary and he/she didn't have to speak with us.

5. The CS said a male she knows as "FRANK" has been in contact with the CS. FRANK (hereinafter JONES) was identified later in the interview as DONDIAGO FRANCISCO JONES (DOB: ▮▮▮▮1988). JONES told the CS that we stopped him in Fargo and searched him. The CS talked to JONES yesterday (12/19/2019). JONES advised the CS that we (the Police) will probably talk to the CS about him (JONES). JONES said we were questioning him about "COUNTRY" (DERRICK WALKER). JONES told the CS not to say anything because once you're in the game, it's pretty serious. The CS was showed a picture of DONDIAGO JONES and identified him as FRANK.

6. The CS said it was Wednesday evening, (12/18/2019) when JONES contacted him/her. JONES contacted the CS from his cell phone. The CS tried calling JONES earlier in the day because JONES said he was going to stop by. The CS was going to ask him when he was going to stop by.

7. The CS confirmed that he/she was selling pills for COUNTRY. COUNTRY (Hereinafter WALKER) has been identified as DERRICK EUGENE WALKER (DOB: ▮▮▮▮1993). The CS said WALKER sold pills for JONES. When WALKER was finished selling pills, he would take the money to JONES and JONES would give WALKER more pills. The CS described JONES as the "head guy", above the CS and WALKER. The CS said there were more people involved. The CS knows these aren't their real names, but the CS knows them as "BILL", "CHASITIY" and "TJ". The CS was shown pictures and identified DARIUS RAMON SLEDGE (DOB: ▮▮▮▮1990) as BILL (Hereinafter D. SLEDGE) , LILLIAN MAE LEE (DOB: ▮▮▮▮1994) as

| Distribution: | Signature (Agent) | Date: |
|---|---|---|
| | | 12/26/2019 |
| | Approved (Name and Title) | Date: |
| | | |

DDE Form - 1
(Oct. 2012)

**DDE SENSITIVE**

This report is the property of the BIA-OJS-DDE.
Neither it nor its contents may be disseminated outside the agency to which it is loaned.

U.S. Department of Interior – Bureau of Indian Affairs
Office of Justice Services - Division of Drug Enforcement

**INCIDENT REPORT**                                                    Page 2 of 4

**Incident Number:**

**Incident Title:** CS Interview

*(Continuation)*

CHASITIY (Hereinafter LEE), and BAQUON MARTESE SLEDGE (DOB: ▇▇▇ 1988) as TJ (Hereinafter B. SLEDGE). The CS said TJ is in jail in Bottineau, ND. B. SLEDGE identified D. SLEDGE as his brother. The CS met D. SLEDGE, LEE and a male who she only knows as MEXICO when WALKER was in Kentucky. The CS said she didn't like meeting new people. The CS stole ten pills from WALKER. JONES was trying to call her, but she didn't answer. B. SLEDGE eventually called the CS. B. SLEDGE told the CS to wait for him to get out of jail.

8. The CS estimated to have started selling pills for WALKER in July 2018. WALKER would get a bag of 50 pills at a time. When someone came and wanted pills, the CS would go see WALKER. WALKER would get a new bag of pills every 2-3 days. The CS saw WALKER with 100 – 150 pills two or three times. (50 pills, three times a week for 68 weeks = 10,200 pills) The ended when they got arrested in November. The CS sold the pills for $80 per pill. WALKER would tell the CS that he was going up north to re-up. The CS said he would go to Bottineau and back. WALKER's source was JONES and B. SLEDGE. The CS identified JONES and B. SLEDGE as the boss of the organization. JONES told the CS that B. SLEDGE was asking about the CS and if the CS was going to "snitch" on them. B. SLEDGE told JONES that he was worried that the CS was going to snitch.

9. JONES told the CS that we stopped him and searched him but didn't find anything. JONES said he was coming back from Detroit, MI. The CS said JONES came back with some pills. JONES had the pills with him when he was searched. When JONES called the CS Wednesday, he told the CS that he needed money and that he was going to go see the CS. JONES wanted the CS to help him sell pills. When they first meet up, JONES will give the CS a pill right away. The CS has proven to JONES that the CS can sell the pills.

10. The CS has seen WALKER with a gun before. The CS has seen WALKER with an "AR" Rifle and a "9 Ruger", believed to be a 9 mm gun. JONES has guns, and he collects guns. WALKER obtained the guns before the CS became close with him. WALKER started bringing methamphetamine.

11. The CS started selling pills for B. SLEDGE since approximately July 2019. The CS met B. SLEDGE when the CS and JONES were stranded in Wood Lake. JONES identified B. SLEDGE as his "head guy". B. SLEDGE told the CS that if he/she wanted to start selling for them, the CS could sell 100 pills and B. SLEDGE could give the CS $1500. If the CS sold 50 pills, the CS would get $1000. B. SLEDGE left 10 pills with the CS and took JONES back north. B. SLEDGE came back that night and the CS had $900 for him. The CS saw B. SLEDGE three other times, and each time, B. SLEDGE had 100 pills (total 300 pills). B. SLEDGE never gave the pills directly to the CS, but he would be with the CS. The people would come to the CS with their money, and the CS would go to B. SLEDGE.

DDE Form   - 1                           **DDE SENSITIVE**
(Oct. 2012)
**This report is the property of the BIA-OJS-DDE.**
**Neither it nor its contents may be disseminated outside the agency to which it is loaned.**

U.S. Department of Interior – Bureau of Indian Affairs
Office of Justice Services - Division of Drug Enforcement

### INCIDENT REPORT

Page 3 of 4

**Incident Number:**

**Incident Title:** CS Interview

*(Continuation)*

12. They sold out of ROBERT (TOUCHE's) residence. TOUCHE didn't know anything for a long time. The CS identified TOUCHE as "slow". The CS said TOUCHE has a "payee", who is in charge of everything for him. TOUCHE invited the CS and WALKER to stay at his residence. They started staying at TOUCHE's residence for about two months prior to their November 2019 arrest.

13. JONES introduced the CS to MEXICO one day. JONES told the CS that anyone he shows up with, the CS can trust. The CS identified MEXICO as another "black guy."

14. The CS only knows JONES' girlfriend as SHANAE. SHANAE (DUBOIS) helped them sell pills. Every time JONES showed up, SHANAE (Hereinafter DUBOIS). The CS gave JONES' phone number (701-871-0806).

15. When the CS got out of jail, JONES visited her. The CS said he/she is not still selling pills for JONES, but she was waiting for JONES to come.

16. The CS has seen B. SLEDGE with a little black gun. The CS described it as a pistol. B. SLEDGE always had the gun on him because he always had a lot of money and pills.

17. The CS said JONES always has a gun and that he has many guns.

18. The CS started selling pills for JONES in approximately May 2019. The CS said the stuff from WALKER came from JONES or B. SLEDGE. The CS didn't know where JONES or B. SLEDGE went when they went to re-up, only that it was a trailer house in Bottineau, ND.

19. Recently, while WALKER was in Kentucky, the CS met another African American male she only knows as RICO (GRAND) from Minot, ND. When the CS met with GRAND, he had two other guys with him. The CS took them to TOUCHE's residence. GRAND wanted the CS to sell pills for him.

20. SA Birchler showed the CS a picture of ERIC MAY. The CS identified ERIC MAY as MEXICO.

21. The CS identified JAHNA GOOD IRON as someone who would help WALKER sell pills. GOOD IRON lives in St. Michaels.

22. The CS identified LEE as the Driver.

23. SA Soldier asked the CS about a conversation the CS had with LEE. LEE was going to the CS because they needed to sell pills and make some money.

DDE Form   - 1
(Oct. 2012)

**DDE SENSITIVE**

**This report is the property of the BIA-OJS-DDE.**
**Neither it nor its contents may be disseminated outside the agency to which it is loaned.**

U.S. Department of Interior – Bureau of Indian Affairs
Office of Justice Services - Division of Drug Enforcement

### INCIDENT REPORT                                                                                Page 4 of 4

**Incident Number:**

**Incident Title:** CS Interview

*(Continuation)*

24. SA Soldier showed the CS a picture of B. SLEDGE and the CS identified the picture as "TJ".

25. SA Soldier showed the CS a picture of LEE and the CS identified the picture as "CHASITIY".

26. SA Soldier showed the CS a picture of D. SLEDGE and the CS identified the picture as "BILL".

27. The CS has gotten pills directly from D. SLEDGE. The CS has been getting pills from D. SLEDGE for about a month and a half before the CS was arrested. D. SLEDGE came twice. D. SLEDGE came 150 – 200 pills at a time, both times. The CS helped sell 50 at a time, twice. (200 pills two times = 400 pills, helped him sell 100 pills).

28. The CS said when they came, they would drive rental cars.

29. SA Soldier stepped out of the interview. SA Birchler was still present.

30. The CS said he/she called GRAND. The CS contacts GRAND through cell phone. The CS has the number at home.

31. The CS hasn't talked to GOOD IRON in about a week. When the CS talked to her, GOOD IRON said she has fentanyl pills. GOOD IRON lives with her mother.

32. JONES told the CS that he needs to make some money so he could get WALKER out (of jail).

33. End of Interview

DDE Form  - 1
(Oct. 2012)

**DDE SENSITIVE**

**This report is the property of the BIA-OJS-DDE.
Neither it nor its contents may be disseminated outside the agency to which it is loaned.**